UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | | |
|---|---|---|
| PivotHealth Holdings, LLC, | § | |
| Plaintiff, | § | |
| | § | Case No: CV-24-01786-PHX-MTL |
| V | § | |
| | § | |
| Lucas Horton | § | |
| Defendant. | § | |

**Plaintiff's Reply To Defendant's Response**

**INTRODUCTION**

The Defendant denies every fantasy that the Plaintiff has alleged for a second time. That he is called a serial litigant by TCPA law breakers like the Plaintiff is a badge of honor as he and others fight for the privacy of their phones.  And the Plaintiff's claim that the Defendant's initial demand was unjustified is a pipe dream at best.  It did not matter that PH was an Arizona company.  They availed themselves to the laws of Texas when they hired or allowed a company to illegally call Texas residents on their behalf. It also did not matter that Pivot did not make the calls or that the Defendant had already settled with another company for these calls.  Pivot was vicariously liable for the calls and Pivot was released by the Defendant in his agreement with them.

The initial lawsuit was dismissed by the Defendant because of the case being in Arizona and because Pivot lied in discovery, making it impossible for the case to continue. See Interrogatory #2 on Exhibit A, where the Defendant asked, "If Companion Life contracts with Allied National to collect premiums, why and how do they bill consumers' credit cards under PH's name? Why is the number listed on the charge a PH number?" The response was, "Defendant responds that 844-630-7500, the number appearing on Plaintiff's credit card

statement, is associated with Insurance Benefits Administrators—an independent company that Pivot has no control over." This is not true according to Google or the credit card statements of the Defendant.

PH also claimed to have no relationship with the company that made the calls and billed the Defendant on the Plaintiff's behalf.  See Interrogatory #3 on Exhibit B.  Immediately after buying the policy from a 3rd party caller, the Defendant received multiple emails from the Plaintiff's email domain. That doesn't happen without an agreement and formal relationship. Up against blatant lies like this, and the fact that the lawsuit was to be litigated in Arizona, the Defendant had no choice but to dismiss the case. It was not due to the merits because if it had been, PH would have lost the case handily.  When Horton transferred the case to Arizona, his circumstances would have allowed for him to be able to travel to Arizona to litigate the case. They do not now.  However, the Plaintiff didn't expect to need to litigate the first case.  PH doesn't get the kind of involvement they had in this process without some sort of agency relationship with the callers.  It just isn't possible for legal and regulatory reasons.

As far as failing to authenticate or describe the relevance of the attachments in the Plaintiff's motion to dismiss, it didn't seem necessary.  However, the following explanations of the exhibits in the motion to dismiss might help.

### Rules OF Evidence

**Exhibit A(1)** – This is the insurance card received after the Defendant purchased the insurance policy to identify who was behind the illegal calls. To get the card, you had to follow the link in the welcome email and download it from PH's website.  PH's name and number are highlighted on the card.

**Exhibit A (1)A –** Is a screenshot of a Google search for the phone number listed on the ID card as well as the Defendant's credit card bills. It clearly shows it is Pivot's number. This can be independently verified with a Google search of your own.

**Exhibit A (2) –** Is a screenshot from Chase.com of the 6 charges made by PH on the Defendant's credit card. See Exhibit C, which is a full credit card statement showing the PH's name and phone number in the charge.

**Exhibit A(3)** – This is the first page of the policy booklet the Defendant received in the numerous emails from PH after buying the policy. It says very prominently that the policy was marketed by PH on every page. See Exhibit D for the entire booklet and the 13 times PH's name is on the 10 page document.

**Exhibit A (4)** - Is a PDF of one of the emails the Defendant received FROM Pivothealth.com immediately after buying the policy. Rank Media, or whomever sold the policy, would not be able to have these emails sent from PH's web domain without an agreement, permission, agency, etc. To claim that there is no relationship between them the company that made the calls when, seconds after the sale is made, emails from PH's web domains are sent, is ridiculous. This shows a coordinated effort between PH and the caller.

On 11/1/2024, Mr. Horton was able to purchase another policy from the Plaintiff, but sold from a different seller. The emails he received were the exact same as when he bought the policy from the illegal calls. See Exhibit E. You will also see the new ID card and what the member area of PH's website looks like for the new and old policy. One is current and one is not. Note the different application numbers.

**Exhibit A (4)** - is a PDF of one of the emails the Plaintiff received from Pivothealth.com after buying the policy.   Rank Media, or whomever sold the policy, would not be able to have these emails sent giving access to Pivot Health's Member Portal, without an agreement with PH.

**Exhibit B** - is PH's Google review rating: 1.5. This goes to show that PH has no reputation to speak of, and what they do have is garbage.  See Exhibit F, which is their BBB page. PH is obviously a garbage company that has a terrible reputation.  Both of these can be independently verified.

Pivot absolutely inflicted these legal fees upon themselves by hiring a third-party company to make illegal calls on their behalf.  Their claim that they had nothing to do with the calls is laughable if you look at the evidence. They are concocting this forgery claim to try and recoup the outrageous (and considering the evidence that they were involved, ill-advised at best, amount of money they spent on shady attorneys who lie and make things like this up.

### Pivot Doesn't Understand The Definition Of Extort

According to Merriam-Webster.com, the act of extorting someone is, "to obtain from a person by force, intimidation, or undue or illegal power".  Extortion implies an illegality to the Defendant's actions and there was none in what the Defendant did by suing PH. They billed his credit card, sent him emails from their web domain, and allowed him to enter the member portion of their website.  Let that sink in.  Rank Media, or whomever, sold a policy to the Defendant and he then received credentials to log into a secure area of PH's website. If that doesn't reek of an agency relationship, then what does? For PH to claim otherwise is just an insult to everyone's intelligence and it is laughable to state that Horton, "quickly discovered that Pivot had nothing to do with the calls."  When he told PH that he found out who actually called

him, it was never going to absolve PH of their involvement. For them to think that was wishful

thinking.  Horton wants to hold anyone and everyone accountable who has tried to turn his

phone into a marketing tool for their business in violation of the TCPA.

    Unfortunately, PH and Mr. Fitzgerald STLL don't understand how vicarious liability works

based on their response, so we will repeat it.

> In the Matter of Rules & Regulations Implementing
> the Tel. Consumer Prof. Act of 1991,
> 27 FCC Red. 1830, 1844, 33 (2012) (footnote and
> internal quotation marks omitted).
> FCC regulations "generally establish that the party
> on whose behalf a solicitation is made bears
> ultimate responsibility for any violations." 8.
> Moreover, a May 2013 FCC Ruling (CG Docket No.
> 11-50) rejected a narrow view of TCPA liability,
> including the assertion that a seller's liability
> requires a finding of formal actual agency and
> immediate direction and control over third parties
> who place a telemarketing call. Id. at 6587 n. 107.

    Under that ruling, PH need not even have a formal, actual agency relationship to held

vicariously liable for calls made on their behalf.


The FCC has also determined that:

> [A]llowing the seller to avoid potential liability by
> outsourcing its telemarketing activities to unsupervised
> third parties would leave consumers in many cases without
> an effective remedy for telemarketing intrusions. This
> would particularly be so if the telemarketers were judgment
> proof, unidentifiable, or located outside of the United
> States, as is often the case. Even where third party
> telemarketers are identifiable, solvent, and amenable to
> judgment limiting liability to the telemarketer that
> physically places the call would make enforcement in many
> cases substantially more expensive and less efficient, since
> consumers (or law enforcement agencies) would be

required to sue each marketer separately in order to obtain relief. As the FTC noted, because "[s]ellers may have thousands of "independent" marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy. May 2013 FCC Ruling, 28 FCC Rcd at 6588 8 (internal citations omitted).

As the FCC points out, most 3rd party marketers are not identifiable, located outside of the country, or even solvent. They are usually fly by night companies operating in strip malls that can disappear in a moment's notice.  The Defendant was lucky that he was able to find Rank Media and that they were solvent. But that doesn't mean that PH was off the hook just because the actual callers settled for their roles. Indeed, the FCC implies that is wants the "head of the snake" held accountable because they can have so many marketers working for them at once and getting a settlement from a 3rd party caller doesn't stop them from having illegal calls made on their behalf.

There is nothing in the TCPA that says numerous companies can't be held accountable for a single set of calls. If that was the case, why do so many TCPA lawsuits have multiple Defendants? Consequently, that the Defendant settled with Rank Media did not exclude him from filing a complaint against PH. The amount he settled with them for was still well below the amount that he was due under the TCPA.

The fact is that all of PH's claims here fall flat.  There was no extortion; the Defendant was simply giving PH an out rather than deal with the lawsuit that he had every right to bring. Demand letters are standard practice and do not fall under the definition of extortion.   PH was vicariously liable for the calls made by Rank Media whether they made them or not. And finally, PH is lying that a forgery was attempted by the Defendant. He knows that emails leave a trail

that can be found.  But as stated in the motion to dismiss, even IF the Defendant had forged the email in question, it is irrelevant to the rest of the case. It was one out of 6 refund demands and then there the 14 illegal calls made on its behalf in violation of numerous statues of the TCPA and Texas telemarketing laws. That email was only a fraction of the evidence the Defendant had against PH.

### The Plaintiff Did Nothing Wrongfully

PH is incorrect to assert that the Defendant did not review the evidentiary motion. He did.  But he rightfully ignored it.  PH was obviously lying in the face of all the evidence of their involvement.  Has PH filed a lawsuit against Rank Media for selling these policies without authorization and causing a lawsuit to be filed against them? Nope.  That is because they are complicit and PH knows they can't sue someone they hired or authorized to sell their policies.

When PH claims the Defendant made false claims about who made the calls, they are again wrong.  Rank Media might have been hired to make the calls, but they might have outsourced that.  The agreement the Defendant signed with Rank Media included a other entities that sounded like call center companies. So, there was no way for Horton to know who actually made the calls. BUT AGAIN.  It doesn't matter who made the calls. PH and Mr. Fitzgerald still can't seem to understand that.

PH had to defend against the Defendant's claims because they were true.  Had they been false, a motion to dismiss based on the merits could have been filed.  None was. That is because PH knew they would just incur more legal expenses in a motion that would be denied.

However, let's imagine that the TCPA claims are not valid as PH asserts.  There were still Texas telemarketing rules broken by PH, which still gave Horton the right so file his complaint.

Texas Business & Commerce Code 301.051(b) states that, "A telephone solicitor may not make a consumer telephone call to a consumer unless: (1) the telephone solicitor, immediately after making contact with the consumer to whom the call is made, identifies:

(A) himself or herself by name;

(B) the business on whose behalf the telephone solicitor is calling

This was not done. The callers claimed to be calling from the "Healthcare Enrollment Center" and neither PH or Rank Media was ever mentioned[1]. The Plaintiff had to purchase a policy to find out who was responsible for the calls.

TX 301.052(1)(A) states that anyone selling goods or services over the phone may not charge a consumer's card unless the seller provided that, "the consumer may receive a full refund for returning undamaged and unused goods or canceling services by providing notice to the seller not later than the seventh day after the date the consumer receives the goods or services; and the seller will process a refund not later than the 30th day after the date the seller receives the returned goods from the consumer; or a full refund not later than the 30th day after the date the consumer cancels an order for the purchase of services not performed or a pro rata refund for any services not yet performed for the consumer;". PH would not cancel the policy and refused to refund charges made to Horton's credit card 6 times. Even if one of the requests was forged as PH claims, there were still 5 valid ones.

TX 301.052(2) states that the caller, "provides to the consumer a written contract fully describing the goods or services being offered, the total price to be charged, the name, address, and business telephone number of the seller, and any terms affecting the sale and

---

[1] *Horton v. PivotHealth Holdings LLC,* 3:2022cv02915, 2022. See Second Amended Complaint.

receives from the consumer a signed copy of the contract."    The violations of this statute alone would have been cause for Horton to file a lawsuit against PH.  In Texas.

TX 302.101 states that, "A seller may not make a telephone solicitation from a location in this state or to a purchaser located in this state unless the seller holds a registration certificate for the business location from which the telephone solicitation is made.  A person who violates this chapter is subject to a civil penalty of not more than $5000 for each violation." *Id. § 302.302.*

This statute excludes companies licensed to sell insurance in the State of Texas.  However, neither Pivot nor Rank Media is, so it applies to them.  This violation alone would have been cause for the Defendant to file a complaint as well. This lack of certificate can be independently verified by calling the Texas Department of Insurance.

PH is again reaching when they claim to have caught the Defendant in a lie with the timestamp of his email reading, "October 13, 2022 at 10:29 AM **CST"**.  CST stands for Central Standard Time, which is where the Plaintiff lives

PH again harps on the fact that Horton knew Pivot didn't actually call him. But AGAIN, they show they do not understand the concept of vicariously liability.  In *Horton v. Palmer Administrative Services, Inc.,* No. 2:2020-cv-03526-X-BN, 2021, court wrote that, "While both sides agree that Palmer itself did not call Horton, Palmer "can still be liable under the TCPA if the calls were made 'on behalf of' [Palmer]." *Hirsch v. USHealth Advisors, LLC*, 337 F.R.D. 118, 132 (N.D. Tex. 2020) (quoting 47 U.S.C. § 227(c)(5)).  And as Horton believed the Northern District Of Texas had jurisdiction over PH, he filed the complaint there.

However, even in Arizona, the 9th Circuit has ruled that companies can be held vicariously liable, such as in *Thomas v. Taco Bell Corp.*, 879 F. Supp. 2d 1079 (C.D. Cal. 2012). That case is very similar to this one in the Taco Bell hired a 3rd party marketer to send text messages on their behalf just as PH hired Rank Media to make calls on their behalf.  In a unanimous ruling, the 9th circuit specifically stated that vicarious liability can provide the basis for a TCPA violation. The court, citing the 2013 declaratory ruling from the FCC in *In re Dish Network, LLC*, expanded the scope of potential agency liability beyond traditional principles: "[T]he FCC observed in its declaratory ruling … that it does 'not believe it is appropriate to limit vicarious liability to the circumstances of classical agency (involving actual seller, or right to control, of the telemarketing call)….Principles of apparent authority and ratification may also provide a basis for vicarious seller liability for violations of [the TCPA].'"

That decision impacts TCPA lawsuits in two very important ways.  First, it demonstrates that the FCC's declaratory rulings concerning the TCPA may be specifically cited and adopted by courts as governing law.  Second, it broadens the scope of what can be construed as vicarious liability and PH was clearly vicariously liable for the calls made by whomever to the Defendant.

PH makes another false claim that Horton dismissed the lawsuit because PH discovered his email was a forgery. He dismissed the lawsuit because PH lied so much in discovery that it was impossible to continue lawsuit.  It wasn't going to be possible for him to travel to Arizona to litigate it anymore. Additionally, the court denied Mr. Horton a subpoena for his credit card company so that he could obtain more info on whomever charged his card.  Horton filed a motion for clarification as to why the subpoena was denied that went ignored.  These 2 draconian actions by the court also played a part in the dismissal.

The court should not care that PH spent $152,579.22 defending Horton's lawsuit.

Besides being an obscene amount for such a small amount of legal work, PH incurred these

costs as a result of their illegal marketing activities. Had they adhered to the rules of the TCPA

when marketing their policies, we would not be here today. That is the crux of this issue. PH

incurred these legal costs as a result of their marketing plan. PH incurred these costs because

they hired a 3rd party marketer who violated the TCPA. PH incurred these costs because they

are liable for illegal calls made by 3rd parties calling on their behalf. There really isn't another

way to say this truth.

PH says Horton immediately wanted to dismiss the lawsuit when "confronted" with his

fake email. That is not true. Horton thought about it for 3 days before grudgingly deciding to let

PH off the hook for the reasons already stated.

Horton's alleged fake email was 1 refund request out of 6. There was ample evidence of

PH's guilt and the single alleged email meant almost nothing in the grand scheme of things.

There were 14 calls with 6 causes of action per call at $1500 per cause. Then one of the causes

was for $5000 per call. Then, there were 6 months where the Defendant was billed against his

wishes and not refunded. 1 supposed fake email is a fraction of what Horton pleaded that PH

illegally did in his first lawsuit and means very little in terms of the root of Horton's complaint

was, which is TCPA violations. Period.

**ARGUMENT**

PH's argument that this court has subject matter jurisdiction is flawed at best. It is still

unbelievable that Mr. Fitzgerald was able to bill PH over $150k what they did in the first lawsuit.

But how can PH claim damages as a result of their own illegal actions? They can't. That is like a

drug dealer suing a customer because the customer told the police on them.  PH does not have

standing and only suffered self-inflicted damages as a result of their own actions.  They might

have spent over $75k, but it was in defending their illegal behavior.  It was not because of

anything Horton did. So, Horton can establish with "legal certainty" that the controversy is

worth nothing here.

Pivot cannot claim damages here. They attempt the 3 prong *Spokeo* Approach, but it

fails.  To prove standing, the claimant must show it:

- **Suffered an injury in fact** - PH didn't suffer any injury other than having to pay to defend

their own illegal marketing tactics.

- **That is fairly traceable to the challenged conduct of the defendant** – If PH can claim

injury, it is not because of the Defendant. It is because Rank Media, or whomever they hired,

illegally called him. If anyone caused PH damages, it is not Horton. He was only pursuing his

rights under the TCPA and Texas telemarketing laws. He doesn't know or care about Arizona

telemarketing laws, which another reason why he is not at home there.

- **That is likely to be redressed by a favorable judicial decision** – A judgment in this case

would not redress the injured party here, who is the Defendant. He suffered damages being

called 14 times in a month by agents of PH. He suffered damages being billed for 6 months of

insurance he did not want to need and had requested the charges to stop and be refunded.  He

is still suffering damages now in having to waste his time responding to this frivolous lawsuit.

PH is like a broken record with claims that Horton pursued false claims or forged evidence

or knew that PH didn't make the calls. His claims were not false, he never forged any evidence,

and PH did not need to make the calls. They again mention that Horton dismissed his lawsuit

with prejudice. Had Horton dismissed the complaint without prejudice, then he could have been billed for the legal fees incurred by PH up to that point. Even though Mr. Horton knows his TCPA claims were legitimate, he had no intention of refiling against a company that lied that much, so dismissing with prejudice was the way to go. There was only misconduct was on the part of PH here. They claim that none of the allegations made by Horton are supported by the complaint he filed.  But if that was the case, why not file a motion to dismiss on the merits instead of incurring such a large legal bill fighting what Horton had filed? PH didn't because they knew they would lose the motion.

Only someone desperate would use the authentication of exhibits argument at this point. What exhibits are not authentic? PH has not denied billing Horton 6 times, so how are those credit card charges not authentic all of the sudden? Horton tried to subpoena his credit card company to find out who actually billed him, but it was denied by the Court.  Did Horton create the first page of the policy booklet? Did he make the ID cards? Did he forge the welcome emails?  PH never disputed the validity of any of this until now. All of these things have already been submitted to the court in other filings, and now that PH wants money from Horton, they dispute them. Also, some of the exhibits can be verified on Google independently.  So, there is little reason for Horton to authenticate a google search.

### Specific Personal Jurisdiction

PH has a wild imagination when they claim the court has specific jurisdiction over Horton. There were no false claims and it is irrelevant that PH is in Arizona when they are responsible for calls made all over the country on their behalf.

### Arizona Contacts

The only contact Horton has had with the forum of Arizona is as a result of PH and their illegal marketing calls.  Had Horton never been called by agents of PH, then we would not be here today.   EVERYTHING that has happened over the last year and a half is due to PH's marketing activities. PERIOD. Horton already went through the 3-part test used by the 9th circuit, but he will do it again.

- **The nonresident defendant must purposefully direct his activities or consummate some transaction with the forum or residents thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws** - Horton didn't purposefully direct anything at Arizona. Nor did he perform any act that availed him to the laws of Arizona. PH broke the Federal and Texas law, so Horton did as was his right and filed a TCPA complaint where the violation occurred. In Texas. He was forced to transfer the case to Arizona as a result of PH filing a motion to dismiss for lack of jurisdiction. Horton never wanted the case in Arizona. But even in moving the case there because of PH's motion to dismiss, Horton wasn't availing himself to the laws of Arizona. The lawsuit was for violations of a federal statute and Texas telemarketing laws. The forum of Arizona was a federal one, but one Horton was forced into it by actions of the Plaintiff.  Additionally, if the case had been as fraudulent as PH claims, they could have filed a motion to dismiss in Texas on the merits and been done with it. However, they knew that they lose a motion to dismiss on the merits and chose the jurisdiction attack.

- **The claim must be one which arises out of or relates to the defendant's forum-related activities** – Horton has no forum related activities other than those as a result of PH's actions.

PH bears the burden of satisfying these two prongs. But they don't satisfy either.

- **The exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable** - This case has no merit and requiring the Defendant to travel to Arizona to defend it is more than unreasonable.  PH certainly thought it was unreasonable for them to have to defend Horton's case in Texas, so it seems hypocritical for them to want Horton to litigate their case in Arizona.

PH then comes up with another test: the "But For" test.  It states that if the injury would not have occurred but for the defendant's state contacts, jurisdiction is appropriate.  However, this is a flawed test in this instance.  PH's supposed injuries would have never have occurred if the Defendant had not been called agents of the Plaintiff.

AGAIN!  Horton only transferred the case to Arizona because PH filed a motion to dismiss for lack of jurisdiction.  And if his claims were false as asserted by PH, he would never have transferred the case to Arizona.  He would have rolled the dice with answer PH's motion to dismiss for lack of jurisdiction in Texas.  Their claim is not logical.  Nobody would pursue a case in another state without good cause.  Horton only dismissed it because of lies told by PH and actions of the court.

None of the actions described by PH was aimed at the state of Arizona. They were aimed at PH, who forced Horton to transfer the case to Arizona. And again, none of this would have happened if PH had not hired 3rd parties to make calls for them.  And if PH had not lied in discovery, that case would have had a different outcome as well.

It is interesting that PH cites *Yammine v. Toolbox for HR Spolka z Ograniczona Odpowiedzialnoscia Spolka Komandytowa*.  For one, is not apples to apples. The opinion also cites the "American Rule", which is that, "a litigant's attorney's fees are not ordinarily

recoverable unless there is a statute or enforceable contract that provides for

them. *Fleischmann Distilling Corp. v. Maier Brewing Co.*, 386 U.S. 714, 717 (1967); *see also*

*Astrue v. Ratliff*, 560 U.S. 586, 591 (2010); *London v. Green Acres Tr.*, 159 Ariz. 136, 145 (Ct. App.

1988)." Here, there is no contract and PH doesn't cite any statute that entitles them to

attorney's fees in this situation.

    *Yammine* is not a tort case as well, which Mr. Fitgerald pointed out in a case cited by Horton.

Mr. Horton did not file his lawsuit in Arizona as *Yammine* did. He had wanted to litigate it in

Texas and PH made that impossible with their motion to dismiss. PH thinks Horton should have

dismissed the case then. However, with the evidence Horton had of PH's role in the sale of the

policy, nobody in their right mind would have dismissed the lawsuit just because PH cried about

and denied involvement. Horton had credit card charges with PH's name and number on them.

He had numerous emails from pivorhealth.com. He had the policy handbook with PH's name on

it 11 times in 10 pages. He had the ID card with their name and number on it. Why would he

have dismissed the lawsuit just because PH denied the claims? In the over 60 TCPA lawsuits filed

by the Plaintiff, only 2 have ever admitted to culpability for the calls or texts. All of the others

follow a variation of the same playbook followed by PH: deny, lie, and try to weasel out of the

claims. Even if they sent the texts or made the calls themselves. So, if Horton had done what PH

said he should have, the vast majority of his lawsuits would have been dismissed.

    Mr. Fitzgerald keeps harping on the fact that PH is an Arizona company as if the

Defendant had no right to sue a company in Arizona whose representatives were illegally calling

Texas residents. When is a Plaintiff not supposed to file a complaint against a company acting

illegally just because it, "would harm a company in this state."? That is laughable. That is akin to

balking at putting a rapist in jail because jail isn't fun.  If PH is so concerned about TCPA lawsuit damages, then don't allow people to break the law selling their products.

It is not clear why Mr. Fitzgerald calls Horton's claim "bald" that his actions were committed in Texas. Horton intentionally directed his lawsuit against the company that was ultimately responsible for the illegal calls: PH. It did not matter and should not matter to him or the court where the company is located.  They broke the law and needed to be held accountable.

Fitzgerald continues his is laughable assertion that Horton has not rebutted any of their allegations and repeats the bad idea that none of the exhibits in his motion to dismiss are authenticated.  In fact. Horton has requested a subpoena for Yahoo to provide a copy of the email sent to PH requesting a refund and they will not be laughing once the results are returned.  He also wants to subpoena PH's emails to see exactly what they received from as well as what they sent him, since PH is calling into question the validity of emails he received from them after purchasing the policy.

Next, PH claims the Plaintiff relying on *Bochetto v Hansing* is misguided.  Although it is contract law and not tort, a single, isolated event is not being enough to make a defendant at home is equivalent in this case. PH's thinking that Horton's forum related activity was extensive is about as ridiculous as saying the Dallas Cowboys will win the Super Bowl this year.   The forum related contact was minimal and the amount of time the lawsuit sat on the docket is immaterial. What matters is that this entire situation was as a result of illegal activity by PH.

The lawsuit was only transferred to AZ due to PH's motion to dismiss and, contrary to PH's assertion, the case was NOT ever heard.  It is unclear how that is an unsubstantiated claim.

All one has to do is a docket search to see that the case was dismissed after discovery. As a result, what the Defendant says is easily found to be true.  It is also not clear how Horton saying that, "everything that had transpired to that point was due to actions of the Plaintiff" is unsubstantiated. It is fact.  Had PH not hired a 3rd party that illegally called Horton, then we would not be here. It is as simple as that.

**Exercising Jurisdiction Is Not Reasonable**

Ph claims that out 7 factors that courts balance when assessing reasonableness, only 1 is applicable here. The distance. There were other arguments that are valid.

(1) **The extent of a defendant's purposeful interjection** – The Defendant had no purposeful interjection.  If PH's agents had not called him in the first place, we would PH would never have been sued and we would not be here today.

(2) **The forum state's interest in adjudicating the dispute** – Arizona's interest in adjudicating this should non-existent.  It is a frivolous lawsuit that ultimately exists due to actions of the Plaintiff and need not clog the courts. PH broke federal and Texas state law. Rewarding PH for their illegal activity is what adjudicating this dispute in Arizona would equate to.

(3) **The most efficient judicial resolution of the controversy** – Is to dismiss it.  PH was given a gift and rewarded with a dismissal of the Defendant's first lawsuit for lying in discovery. Had they not lied, the lawsuit would have continued and it would have cost them far more than $150K to defend and pay the judgment a jury would order.

(4) **The importance of the forum to the plaintiff's interest in convenient and effective relief** – Arizona should not be an important forum to PH unless they actively target

Arizona resident with their illegal robocalls.  However, illegal activities are not protected, nor do they give PH grounds to sue someone for injuries that were due to those illegal actions.

(5) **The existence of an alternative forum** – If PH wants to litigate this, the correct forum is in Dallas, where the bulk of the actions happened and where the court had jurisdiction over the Defendant.

What evidence does PH need that Horton would not be able to leave Dallas? A paystub for his wife showing she is a teacher 30 minutes away and not able to drive their daughter to school?  Something from his daughter's gymnastics gym showing she goes 3 times a week and that her mother can't drive her?  It can be provided. How can he prove that there is no one else to drive her?

As the Defendant said before, his circumstances have changed. He was also showing bravado and exaggerating when he made the comments about travelling to Arizona that PH quoted.  When he filed the first lawsuit, he was in a carpool and could have relied on others if he had to go out of town.  Now, he is not and does all the driving himself.

Contrary to what PH claims, Horton was perfectly willing to handle the part of his first lawsuit that could be done virtually at the beginning.  However, that was because he expected truthful discovery and that the case would be dismissed without him actually having to go to Arizona. Out of the many TCPA lawsuits he has filed, all but a few have not settled even when Horton had less evidence than what he has against PH.  He expected this lawsuit to go as most of the others did, especially with the evidence of PH's involvement.

But the idea that Pivot is letting anyone sell their policies without oversight and a formal agreement is ridiculous.  See Exhibit G.  This was filed before but is being refiled for emphasis. This is a sample call script for health insurance plans obtained in discovery from the Defendant in *Horton v Med-Sense Guaranteed Association*, No. 3:2020cv03470, 2020.  Companies like Rank Media do not have the knowledge or ability to come up with call scripts that satisfy the rules in each state. That is not their job.  Look at all the highlighted areas.  The call scripts used to sell policies like the one bought by Mr. Horton are complex, legal documents and would have to come from a company like PH and not a 3rd party marketer like Rank Media. If a 3rd party marketer was to not disclose mandatory disclosures, offered a product not legal in that state, or somehow violated laws of that state, PH is on the hook for any regulatory fines or problems. Just like PH is on the hook for the TCPA violations.

## Venue

Arizona is not the proper venue. Contrary to PH's claims, the bulk of the events occurred in Texas.  Mr. Fitzgerald mentions the 4 months the case was in Arizona courts, but it was a Texas court for almost a year.  The bulk of the actions in this lawsuit occurred in Texas.  Again, the Defendant cites Sec 12-401 of Arizona's Courts and Civil Proceedings, which states that, "No person shall be sued out of the county in which such person resides,".  Mr. Fitzgerald claims this statute doesn't apply, but offers no evidence as to why.

## Conclusion

Mr. Horton doesn't pursue claims he knows to be false. Nor does he fabricate evidence. And he surely would never waste his time or risk sanctions in litigating a losing or frivolous case. He dismissed his first lawsuit against PH as soon as he realized it was futile and that PH was

never going to come clean.  That wasn't until after discovery.  Before that, he had every reason to think PH could and would be held accountable for their obvious role in the calls.

Not once in the over 60 TCPA lawsuits filed by Horton, has a defendant tried to blame him for forging evidence or pursuing false claims. PH is the first. That can be verified independently as well.  That he had already recovered 18K from the actual caller is irrelevant; there was still room left in what was owed Horton for the number of calls made to him.  PH cannot avoid TCPA liability by hiding behind someone they hired to make calls on their behalf.  If anyone is trying to defraud the court, it is PH. Their actions caused the first lawsuit. Their actions and lies forced Horton to dismiss the first lawsuit.  And now their actions are wasting the Court's and Mr. Horton's time.

The bottom line is that any injuries suffered by PH were a result of their own illegal marketing and were not traceable to anything Horton did.  Everything Horton did here was a reaction to something PH did.  They illegally called him.  He filed a lawsuit.  They filed a motion to dismiss for jurisdiction.  He filed a motion to transfer to where PH claimed to be at home. They lied in Discovery.  He realized it was a losing battle and dismissed the lawsuit.  So, this could not possibly be a diversity case if there are no damages caused by the Defendant.

It is also the wrong venue according to Sec 12-401 and the fact that Horton is not at home in Arizona in any way. His only contacts were as a result of being illegally called by people acting on behalf of the Plaintiff.  Had Horton never been called, PH would never have been sued.  Had he not sued, he never would have been exposed to the Arizona forum at all. However, with Plaintiff's name and number all over the policy docs he received, Horton felt the

obligation to file a TCPA lawsuit against them.  This amount of incriminating evidence is why

they never filed a motion to dismiss on the merits; they knew it was a waste.

A good question to ask is why hasn't PH filed a lawsuit against Rank Media for making

calls on their behalf and selling policies without their permission?  If someone other than PH is

to blame for the legal costs they incurred, it is Rank Media.  But they can't sue someone they

hired.  For these and the many reasons mentioned in the 2 filings for this motion, the complaint

should be dismissed.


Dated: 11/04/2024            Respectfully submitted,



_____

Lucas Horton
1202 Stratford Dr
Richardson, TX 75080
lukeduke365@yahoo.com
Tel: (214) 909-3341