**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| PivotHealth Holdings LLC,<br><br>　　　　Plaintiff,<br><br>v.<br><br>Lucas B. Horton,<br><br>　　　　Defendant. | No. CV-24-01786-PHX-SHD<br><br>**ORDER** |

　　　　Pending before the Court is Defendant Lucas Horton's Motion to Dismiss for Lack of Jurisdiction (the "Motion"). (Doc. 12.) For the following reasons, the Court **denies** the Motion.

**I.　　BACKGROUND**

　　　　Plaintiff PivotHealth Holdings, LLC ("Pivot"), an Arizona-organized limited liability company with its principal place of business in Arizona, makes short-term health insurance coverage available for individual consumers. (Doc. 1 ¶ 7.) Horton is an individual residing in Texas. (Doc. 12 at 11–12.)

　　　　This litigation arises out of a previous lawsuit (the "Underlying Action") filed by Horton against Pivot. (Doc. 1 ¶¶ 29, 43.) In the Underlying Action, Horton alleged that either Pivot or an agent acting on Pivot's behalf engaged in illegal telemarketing behavior by calling Horton without authorization between September and October 2022. (*Id.* ¶ 16; Doc. 12 at 7.) Horton purchased a health insurance policy in response to one of these calls, allegedly to discover who was responsible. (Doc. 1 ¶ 17; Doc. 18 at 8.) The caller

recommended a Pivot-brand policy. (Doc. 1 ¶ 18.) Horton then emailed Pivot a draft complaint for violating various laws, including the Telephone Consumer Protection Act ("TCPA"), and identified Arizona as Pivot's primary place of business. (*Id.* ¶ 19; Doc. 16-3 at 3–4.) In a later email to Pivot, Horton claimed it had also violated Texas Business and Commerce Code § 301.052, which requires sellers to provide a refund policy to consumers before charging them, and alleged that he requested a refund (the "Refund Demand") days after purchasing his policy and Pivot did not grant a refund. (Doc. 16-1 at 13–14.)

In December 2022, Horton filed the Underlying Action in the Northern District of Texas. (Doc. 16 at 3, 6.) After Pivot filed a motion to dismiss for lack of jurisdiction, that court granted Horton's motion to transfer his case to the District of Arizona. (Doc. 1 ¶¶ 30, 34; Doc. 12 at 11.) Horton continued to litigate his case against Pivot in Arizona, including by producing the Refund Demand to Pivot. (Doc. 1 ¶ 36.) Pivot alleges that Horton forged this Refund Demand. (*Id.* ¶ 39.)

In April 2024, Horton voluntarily dismissed the Underlying Action with prejudice. (*Id.* ¶ 41.) The parties disagree about the reason for this. Pivot asserts this was to "conceal the fact [Horton] forged the Refund Demand." (*Id.* ¶ 42.) Horton responds this was because the case was in Arizona and Pivot "lied in discovery, making it impossible for the case to continue." (Doc. 18 at 1.)

Pivot then brought this action in July 2024 seeking damages stemming from the Underlying Action and asserting claims for wrongful institution and continuation of civil proceedings and abuse of process. (Doc. 1 ¶¶ 44–59.) In response, Horton filed the Motion and argues that (1) this Court lacks subject matter jurisdiction over Pivot's claims, (2) this Court lacks personal jurisdiction over Horton, and (3) venue is improper. (Doc. 12.)

**II.     DISCUSSION**

    **A.     Subject Matter Jurisdiction**

Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a defendant may move to dismiss an action for lack of subject-matter jurisdiction. The party asserting jurisdiction bears the burden of establishing that subject matter jurisdiction exists. *Kokkonen v.*

*Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

### 1. Standing

Because Article III's standing requirements limit federal courts' subject matter jurisdiction, a plaintiff's standing to bring a claim may be challenged by a 12(b)(1) motion to dismiss. *See Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1121–22 (9th Cir. 2010). "On a motion to dismiss for lack of standing, a district court must accept as true all material allegations in the complaint, and must construe the complaint in the nonmovant's favor." *Id.* at 1121 (citation omitted). "The Court may not speculate as to the plausibility of the plaintiff's allegations." *Id.* The Constitutional minimum of standing requires three elements: (1) a concrete and particularized injury in fact; (2) a causal connection between the injury and the challenged conduct, and (3) a likelihood that the injury would be "redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (quotation marks omitted). The elements of Article III standing must "be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *See id.* at 561. At the motion to dismiss stage, a plaintiff need only plead general factual allegations, as courts presume these "embrace those specific facts that are necessary to support the claim." *Id.* The Court addresses each element in turn.

#### a. Injury-in-fact

Horton argues that Pivot did not suffer any concrete damages because any legal costs it incurred resulted from defending its own illegal actions—*i.e.*, violating the TCPA and Texas state law by either calling Horton without authorization or having an agent call on Pivot's behalf. (Doc. 12 at 7.) Horton also argues that Pivot's alleged damages to its reputation are meritless as (1) Pivot is an unknown company and (2) a TCPA lawsuit would not harm a company's reputation. (*Id.* at 7–8.)

The Court finds that Pivot has sufficiently alleged injury-in-fact at this stage in the litigation. *See Lujan*, 504 U.S. at 561 (plaintiff's general pleading allegations regarding

standing are sufficient at motion to dismiss stage). An injury-in-fact must be (a) concrete and particularized, and (b) actual or imminent, rather than hypothetical. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.* (*TOC), Inc.*, 528 U.S. 167, 180 (2000). "Central to assessing concreteness is whether the asserted harm has a 'close relationship' to a harm traditionally recognized as providing a basis for a lawsuit in American courts," such as monetary harm and various intangible harms, including reputational harm. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 417 (2021). Here, Pivot plausibly alleges monetary harm in its pleadings. Pivot alleges that because of Horton's wrongful conduct in initiating the Underlying Action and forging the Refund Demand, it suffered damages including "employee time, costs, and legal fees" incurred in responding to and defending against Horton's claims. (Doc. 1 ¶ 52; Doc. 16 at 11.) Pivot also plausibly alleges its reputation was harmed by Horton naming it as a defendant in a federal suit in the Underlying Action. (Doc. 1 ¶ 6; Doc. 16 at 11.) These allegations are concrete and particularized injuries sufficient to establish standing.

### b. Causation

Horton's argument that he did not cause any of Pivot's alleged injuries because they resulted from Pivot's own actions also goes to the question of causation. (Doc. 12 at 7.) Horton further contends that if Pivot did suffer any damages, these were caused by whoever illegally called Horton rather than by Horton himself, because he was merely pursuing his legal rights by filing the Underlying Action. (Doc. 18 at 12.)

For a sufficient causal connection between the injury and the complained-of conduct, the injury must be fairly traceable to the defendant's challenged action and not the result of "the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560. Accepting Pivot's allegations as true, the injuries alleged here—monetary harm resulting from its attorneys and employees responding to and defending against Horton's claims, and reputational harm resulting from Horton's federal lawsuit—were a "direct and proximate result of [Horton's] wrongful conduct in initiating the Underlying Action" and forging the Refund Demand (Doc. 1 ¶¶ 6, 52, 59), and not the result of "the

independent action of some third party" who called Horton, *Lujan*, 504 U.S. at 560. "At this stage of the proceedings, [the Court does] not speculate as to the plausibility of [these] allegation[s], . . . or as to [their] sufficiency to establish liability." *Bernhardt v. County of Los Angeles*, 279 F.3d 862, 869 (9th Cir. 2002) (citations omitted). Thus, looking solely at the face of the complaint, Pivot adequately alleges causation.

### c. Redressability

Horton also argues Pivot does not have standing because a judgment would not redress "the injured party here, who is [Horton]" rather than Pivot, as he contends *he* suffered damages resulting from the unlawful phone calls, being billed by Pivot for insurance, and now responding to this lawsuit. (Doc. 18 at 12.)

The standing analysis focuses on whether *Pivot's* injury can likely be redressed by a favorable decision, not Horton's injury. *See Lujan*, 504 U.S. at 560–61 (*plaintiff* must have suffered an "injury in fact" that is likely to be redressed). Pivot's requested relief is to "recover the damages it suffered because of [Horton's] malicious prosecution and abuse of process, punitive damages to deter similar claims, and equitable relief barring [Horton] from filing future lawsuits *pro se* without leave from this Court." (Doc. 1 ¶ 6.) If granted, this relief would redress Pivot's allegations of monetary and reputational injury stemming from Horton wrongfully initiating the Underlying Action. Therefore, Pivot has adequately pled redressability.

Based on the foregoing, the Court finds that Pivot has standing.

### 2. Diversity Jurisdiction—Amount in Controversy

A federal district court has "original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs" and the parties are diverse. 28 U.S.C. § 1332(a). When a plaintiff originally files in federal court, "the amount of controversy is determined from the face of the pleadings." *Crum v. Circus Circus Enters.*, 231 F.3d 1129, 1131 (9th Cir. 2000). "The sum claimed by the plaintiff controls so long as the claim is made in good faith." *Id.*

Horton argues that Pivot cannot satisfy the $75,000 amount in controversy

threshold. (Doc. 12 at 4.) In support, he cites the standard for removal to federal court to argue that in the same way a defendant can establish the $75,000 threshold for removal, a defendant should be able to establish that a claim does not meet the $75,000 threshold. (*Id.* at 5.) This case, however, is not a removal case. As Pivot notes, the correct standard for whether a case should be dismissed for failure to meet the amount in controversy is the "legal certainty" standard. *See Geographic Expeditions, Inc. v. Est. of Lhotka ex rel. Lhotka*, 599 F.3d 1102, 1106 (9th Cir. 2010) ("To justify dismissal, it must appear to a legal certainty that the claim is really for less than the jurisdictional amount." (quotation marks omitted)). Under this standard, "a federal court has subject matter jurisdiction unless upon the face of the complaint, it is obvious that the suit cannot involve the necessary amount." *Id.* (internal quotation marks and citation omitted).

Horton then argues that the amount in controversy "could not possibly be $75,000" because not much time was invested in the first lawsuit, Pivot caused its own attorneys' fees because of its alleged TCPA violations, the Refund Demand is a small part of the case and would not have taken time to investigate, and Pivot does not have a reputation to damage because its online reviews are negative. (Doc. 12 at 5–6.) But these contentions are essentially asking the Court to resolve the merits of this action, which is not appropriate at the pleading stage. *See Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983) ("[W]here the jurisdictional issue and substantive issues are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits, the jurisdictional determination should await a determination of the relevant facts on either a motion going to the merits or at trial."); *see also Healthcare Inc. v. Doyle*, 2025 WL 1094309, at *3 (D. Ariz. 2025) (finding that defendant's factual attack to refute plaintiff's alleged amount in controversy was essentially a request for the court to resolve the merits of the action, which was premature at the pleading stage).

In its complaint, response to Horton's Motion, and attached affidavit, Pivot explains in good faith that it incurred more than $75,000 in damages from attorneys' fees and reputational harm. (Doc. 1 ¶¶ 11, 52, 58; Doc. 16 at 10; Doc. 16-1 at 2 ¶ 5.) These

allegations are sufficient to meet the amount-in-controversy requirement because it is not legally certain that the amount in controversy is less than $75,000.

### B. Personal Jurisdiction

"Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1141 (9th Cir. 2017) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014)). "Arizona law permits the exercise of personal jurisdiction to the extent permitted under the United States Constitution." *Id.* (citing Ariz. R. Civ. P. 4.2(a)). Accordingly, whether this Court has personal jurisdiction over Horton "is subject to the terms of the Due Process Clause of the Fourteenth Amendment." *Id.*

"Constitutional due process requires that defendants have certain minimum contacts with a forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id.* (quotation marks omitted). Minimum contacts exist "if the defendant has continuous and systematic general business contacts with a forum state (general jurisdiction), or if the defendant has sufficient contacts arising from or related to specific transactions or activities in the forum state (specific jurisdiction)." *Id.* at 1142 (quotation marks omitted). "In giving content to that formulation, [courts have] long focused on the nature and extent of the defendant's relationship to the forum State." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021) (quotation marks omitted).

Here, Horton argues that this Court lacks specific personal jurisdiction over him. (Doc. 12 at 9.) "The contacts needed for this kind of jurisdiction often go by the name 'purposeful availment.'" *Ford Motor Co.*, 592 U.S. at 359 (citation omitted). This means that the defendant "must take some act by which [he] purposefully avails [himself] of the privilege of conducting activities within the forum State." *Id.* (quotation marks omitted). These contacts "must be the defendant's own choice and not random, isolated, or fortuitous," such as by "exploi[ting] a market in the forum State or entering a contractual relationship centered there." *Id.* (alteration in original) (quotation marks omitted). The

Court may not consider "the defendant's contacts with persons who reside" in the forum State, but instead the "defendant's contacts with the forum State itself." *Walden v. Fiore*, 571 U.S. 277, 285 (2014). Further, even if the defendant did take some action in the forum State, the plaintiff's claims must also "arise out of or relate to the defendant's contacts with the forum." *Ford Motor Co.*, 592 U.S. at 362 (quotation marks omitted). In other words, there must be a "strong relationship among the defendant, the forum, and the litigation." *Id.* at 365 (quotation marks omitted).

> In this Circuit, the test for specific jurisdiction is as follows:
>
> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable.

*Morrill*, 873 F.3d at 1142. "The plaintiff bears the burden of satisfying the first two prongs of the test." *Id.* (quotation marks omitted). "If the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the defendant to present a compelling case that the exercise of jurisdiction would not be reasonable." *Id.* (quotation marks omitted).

### 1. Purposeful Direction

The first prong of the test for specific personal jurisdiction involves an assessment of whether a defendant purposefully directed his activities toward the forum state or purposefully availed himself of the privilege of conducting activities there. *Id.* Because Pivot's malicious prosecution and abuse of process claims sound in tort, we undertake the "purposeful direction" test. *See id.* (courts generally apply the "purposeful availment" test to contract claims and the "purposeful direction" test to tort claims). Purposeful direction requires the defendant to have "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum

state." *Id.* (quotation marks omitted). "The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Walden*, 571 U.S. at 290. "[I]n the absence of an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts." *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990).

### a. Intentional Act

The intentional act requirement connotes an "intent to perform an actual, physical act in the real world, rather than an intent to accomplish a result or consequence of that act." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800–01 (9th Cir. 2004). Here, Pivot has made a prima facie showing that Horton committed intentional acts by transferring the Underlying Action to and litigating in this Court in Arizona. (Doc. 16 at 2.)

### b. Express Aiming

For the express aiming analysis, we look at whether "the defendant's allegedly tortious action was expressly aimed at the forum." *Picot v. Weston*, 780 F.3d 1206, 1214 (9th Cir. 2015) (internal quotation marks and citation omitted). Because the precise form of analysis depends largely upon the "specific type of tort or other wrongful conduct at issue," *Schwarzenegger*, 374 F.3d at 807, our focus is on Horton's actions related to Pivot's claims of wrongful institution of civil proceedings and abuse of process. Pivot's claims are based on Horton allegedly litigating "knowingly frivolous claims in bad faith" and disclosing the forged refund demand in Arizona. (Doc. 1 at 1.) The tort must also "involve the forum state itself, and not just have some effect on a party who resides there." *Morrill*, 873 F.3d at 1145. Horton argues that this Court does not have jurisdiction because he has never been to, has no connection to, and has never had contact with Arizona. (Doc. 12 at 9, 15.)

The Court disagrees. It does not matter that Horton has not physically been to Arizona, as "physical presence in the forum is not a prerequisite to jurisdiction." *See Walden*, 571 U.S. at 285. (citation omitted). But "physical entry into the State—either by

the defendant in person or through an agent, goods, mail, *or some other means*—is certainly a relevant contact." *Id.* (emphasis added and citation omitted). In a recent opinion, the Ninth Circuit concluded that a defendant's conduct satisfied the "express aiming" factor reasoning that its use of electronic means established an "entry into the [forum] state" and "certainly [was] a relevant contact." *Briskin v. Shopify, Inc.*, 2025 WL 1154075, at *11 (9th Cir. 2025). Similarly, Horton's alleged conduct in this forum—transferring the case here, preparing a discovery plan, moving to amend his complaint, attempting to issue a subpoena, and disclosing the Refund Demand (Doc. 16 at 14)— created sufficient relevant contacts with Arizona to find that Horton expressly aimed his actions at this forum, even if they were undertaken electronically. *See id.*

Horton's alleged conduct individually targeting Pivot further supports this conclusion. A defendant individually targets a plaintiff when the defendant engages in "wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state." *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1069 (9th Cir. 2017) (quotation marks omitted). Horton is correct that to establish jurisdiction, "Pivot cannot simply allege that . . . [Horton] knew Pivot was an Arizona company" and therefore he "could have foreseen harm in the forum." (Doc. 12 at 15–16.) But while individual targeting "will not, on its own, support the exercise of specific jurisdiction," it is "relevant to the minimum contacts inquiry." *Axiom Food, Inc.*, 874 F.3d at 1070. Here, in addition to its arguments regarding Horton's tortious actions aimed at Arizona, Pivot also alleges that Horton knew his claims would harm an Arizona company because Horton's draft complaint identified Pivot's address in Arizona. (Doc. 16 at 15; Doc. 1 ¶ 10.)

c. **Harm Likely to be Suffered in the Forum State**

For this same reason, Pivot has made a prima facie showing that Horton "cause[d] harm that" he knew was "likely to be suffered in the forum state." *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1209 (9th Cir. 2006). Pivot's allegations—that Horton knew it was based in Arizona and therefore that any harm caused by his allegedly tortious activities would be felt in Arizona, (Doc. 16 at 15; Doc. 1 ¶ 10)—

are sufficient to meet the harm requirement, *cf. BBK Tobacco & Foods LLP v. Cent. Coast Agric. Inc.*, 2020 WL 3893563, at *5 (D. Ariz. 2020) (harm requirement satisfied where defendant knew that plaintiff was based in Arizona and that any harm defendant caused would be felt in Arizona as this was plaintiff's principal place of business).

Horton relies on *Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008), to argue this Court lacks jurisdiction. (Doc. 12 at 11.) In *Boschetto*, a California plaintiff purchased a car from non-resident defendants on eBay. 539 F.3d at 1014. The defendants communicated via email with the plaintiff to arrange the car's delivery. *Id.* After discovering issues with the car, the plaintiff sued the defendants in California. *Id.* at 1015. The Ninth Circuit held that the defendants' "lone transaction for the sale of [the car]" was insufficient to establish personal jurisdiction over them because this was a "one-shot affair" that did not create any ongoing obligations with the plaintiff in California.. *Id.* at 1017. "[O]nce the car was sold the parties were to go their separate ways." *Id.* Those facts are dissimilar to the jurisdictional facts here. Horton created ongoing obligations with this Court and Pivot by transferring the Underlying Action to Arizona. (Doc. 1 ¶¶ 30, 34; Doc. 12 at 11.) And Horton continued to actively litigate his case in Arizona, (Doc. 16 at 14), in contrast to the one "lone transaction" in *Boschetto*. Further, as Pivot points out, *Boschetto* is also distinguishable as it was a contract-based case, and thus the Ninth Circuit applied a different analytical framework. 539 F.3d at 1016 (following the purposeful availment standard because the case sounded in contract).

This Court has personal jurisdiction over Horton by virtue of his decision to litigate the Underlying Action in Arizona, as this "connects [Horton] to the forum in a meaningful way." *See Walden*, 571 U.S. at 290; *cf. Yammine*, 2022 WL 791203, at *3 ("By choosing a particular forum in which to seek affirmative relief, plaintiff effectively waives any objections to that forum based on personal inconvenience.") (citing 6 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1416 (3d ed. 2025)); *id.* ("Once a plaintiff invokes the jurisdiction of a federal court by filing a complaint, the court maintains jurisdiction over the plaintiff for all subsequent proceedings . . . ."). In *Verve, L.L.C. v.*

*Hypercom Corp.*, 2006 WL 8441358, at *2 (D. Ariz. 2006), plaintiff/counter-defendant Verve filed a case against defendant/counter-plaintiff Hypercom in the Western District of Texas. That court transferred the case to this Court over Verve's objection. *Id.* at *4. The Court later dismissed Verve's claims, leaving only Hypercom's counterclaims. *Id.* at *2. When Verve moved to dismiss the counterclaims for lack of personal jurisdiction, the Court denied the request, stating that "[w]e had jurisdiction over Verve upon transfer of this case and at the time the counterclaims were filed, and we retain jurisdiction over Verve with respect to the counterclaims." *Id.* at *4. Here, while Pivot brought its claims in a new suit rather than through counterclaims, the claims still stem from the Underlying Action. And Horton himself invoked this Court's jurisdiction in the Underlying Action by choosing to transfer his case here. By doing so, he purposely directed his allegedly tortious conduct at this forum. *See Morrill*, 873 F.3d at 1142; *cf. Leman v. Krentler-Arnold Hinge Last Co.*, 284 U.S. 448, 451 (1932) (by suing in federal district court, the plaintiff "submitted itself to the jurisdiction of the court with respect to all the issues embraced in the suit").

Horton argues that he did not choose to direct his activities at Arizona—rather, Pivot forced him to do so. (Doc. 12 at 11–12.) He contends Pivot caused him to file the Underlying Action by illegally calling him and caused him to transfer the case to Arizona by moving to dismiss for lack of jurisdiction. (*Id.*) But "[h]ow [Horton] came to file in this District does not change the fact that [Horton] filed in this District, invoked the jurisdiction of this District, and consented to personal jurisdiction in this District." *Yammine*, 2022 WL 791203, at *3.

For the reasons explained above, the Court is not persuaded by Horton's argument that he did not create any "link between [himself] and the forum," and rather, Pivot is the only link. (Doc. 12 at 15, 17.) Horton's combined acts of purposefully availing himself of this Court's jurisdiction in the Underlying Action, litigating that action in Arizona, and individually targeting a forum-resident satisfy the purposeful direction test.

### 2. Forum-Related Conduct

To satisfy the second prong, Pivot "must show that [it] would not have suffered an

injury 'but for' [Horton's] forum-related conduct." *Menken v. Emm*, 503. F.3d 1050, 1058 (9th Cir. 2007). Horton's forum-related conduct consisted of transferring the Underlying Action to Arizona and continuing to litigate his claims in this Court while allegedly knowing they were frivolous and false. But for these actions, Pivot would not have suffered its claimed injuries. (Doc. 1 ¶¶ 52, 59.) Because Pivot's claims for wrongful institution and continuation of civil proceedings and abuse of process arise out of these purposeful contacts, the forum-related conduct prong is satisfied.

### 3. Reasonableness

As the first two prongs of the effects test have been satisfied, Horton must "set forth a compelling case that the exercise of jurisdiction would not be reasonable." *Picot*, 780 F.3d at 1214. In determining reasonableness, courts must consider seven factors: (1) the extent of the defendants' purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendants' state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum. *CE Distrib., LLC v. New Sensor Corp.*, 380 F.3d 1107, 1112 (9th Cir. 2004) (citation omitted).

The first factor weighs strongly in Pivot's favor. As discussed, Horton purposefully directed his activities at Arizona and interjected himself into Arizona's affairs by choosing this forum in which to litigate the Underlying Action. While Horton argues he would not have sued if not for Pivot's actions, that does not change the fact he transferred the Underlying Action to this District. (*See* Doc. 18 at 18.) *See Yammine*, 2022 WL 791203, at *3.

To justify dismissal based on the second factor, the defendant must prove the "inconvenience is so great as to constitute a deprivation of due process." *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1323 (9th Cir. 1998). Horton argues he would be unfairly burdened by this Court asserting jurisdiction because Plaintiff's claims are unsubstantiated,

and he has childcare responsibilities in Texas. (Doc. 12 at 11–13.) Pivot responds that Horton was "willing to litigate the Underlying Action in this Court when Pivot was the defendant" and cannot now claim this imposes "such a burden as to deny him his due process." (Doc. 16 at 17.) While it would be more burdensome for Horton to litigate in Arizona rather than Texas, "with the advances in transportation and telecommunications and the increasing interstate practice of law, any burden is substantially less than in days past." *CE Distrib.*, 380 F.3d at 1112. This factor weighs slightly in favor of Horton but is not so great an inconvenience as to deprive him of due process.

The third factor is neutral as there are no issues regarding sovereignty.

The fourth factor weighs in favor of Pivot, as "Arizona has a strong interest in protecting its residents from torts that cause injury within the state, and in providing a forum for relief." *Brainerd v. Governors of the Univ. of Alberta*, 873 F.2d 1257, 1260 (9th Cir. 1989).

When evaluating the fifth factor, courts "have looked primarily at where the witnesses and the evidence are likely to be located." *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1489 (9th Cir. 1993). Because witnesses and evidence are located in both Arizona and Texas, neither forum has a clear efficiency advantage. Therefore, this factor is neutral.

The sixth factor is not weighed heavily. *Panavision*, 141 F.3d at 1324. But we find it is slightly in favor of Pivot, as it presumably chose this District because it thought it would receive convenient and effective relief here.

The seventh factor favors Horton, as while it may be inconvenient for Pivot to litigate in Texas, it is an alternative forum.

Weighing these seven considerations, Horton has not met his burden to present a compelling case that the exercise of jurisdiction would not be reasonable. *See Panavision*, 141 F.3d at 1324 ("[W]e conclude that although some factors weigh in [defendant's] favor, he failed to present a compelling case that the district court's exercise of jurisdiction in California would be unreasonable.").

In sum, all of the requirements for the exercise of specific, personal jurisdiction are met.

### C. Venue

Venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2). In determining where a substantial part of the events occurred in a tort action, "the locus of the injury [i]s a relevant factor." *See Myers v. Bennett L. Offs.*, 238 F.3d 1068, 1075–76 (9th Cir. 2001). Once a defendant has challenged venue, the plaintiff has the burden of demonstrating that venue is proper in the chosen district. *Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 496 (9th Cir. 1979). The court must "draw all reasonable inferences in favor of the non-moving party and resolve all factual conflicts in favor of the non-moving party." *Mach 1 Air Servs. Inc. v. Bustillos*, 2013 WL 1222567, at *9 (D. Ariz. 2013) (quotation marks omitted). A plaintiff's choice of venue is generally given substantial weight and a defendant typically "must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986).

Horton argues that under Arizona Revised Statute § 12-401, a person cannot be sued outside of the county in which they reside. (Doc. 12 at 4.) He also contends that all of the alleged events occurred in Texas rather than Arizona, such as the Refund Demand and his deposition. (*Id.*)

First, because Pivot brought this action in federal court, federal law rather than Arizona law determines venue, so the statute Horton cites does not apply. *See* 28 U.S.C. § 1391(a)(1) ("[T]his section shall govern the venue of all civil actions brought in district courts of the United States . . . ."). Second, while some events giving rise to Pivot's claims did occur in Texas, "[s]ubstantial does not mean the majority of or even the most events giving rise to the claims; it's a qualitative, rather than a quantitative, assessment." *Deutsch v. Anna Deutsch Tr. dated Sept. 3, 1991*, 2023 WL 2691451, at *2 (D. Ariz. 2023) (citation omitted). Pivot argues that a substantial part of Horton's wrongful conduct took place in

this District because "Horton spent four months litigating his frivolous claims in this Court, . . . forced Pivot to defend against his false claims on the merits," forced it "to incur more than $90,000 while the case was pending in this Court," and "prepared and disclosed the forged Refund Demand" while litigating in this Court. (Doc. 16 at 17–18.) Pivot has met its burden of proving that a substantial part of events occurred in the District of Arizona, and therefore the Court finds that venue is appropriate under 28 U.S.C. § 1391(b)(2).

Accordingly,

**IT IS ORDERED** denying Horton's Motion to Dismiss (Doc. 12).

**IT IS FURTHER ORDERED** setting a status conference on Horton's Motion for Issuance of Subpoena (Doc. 17) and Pivot's Motion for Sanctions and In Person Hearing (Doc. 25) for **Wednesday, July 16, 2025, at 10:00 a.m.**, to be conducted via Zoom before Judge Sharad H. Desai. The parties will receive connection information by email in advance of the hearing. The parties shall have their calendars on hand and be prepared to discuss potential dates for a hearing on the Motion for Sanctions and In Person Hearing (Doc. 25).

Dated this 7th day of July, 2025.

_____
Honorable Sharad H. Desai
United States District Judge