UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

_____

| | |
|---|---|
| **PivotHealth Holdings, LLC,** | ) |
| | ) No. 2:24-cv-01786-PHX-SHD |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) Phoenix, Arizona |
| **Lucas B. Horton,** | ) August 21, 2025 |
| | ) 10:01 a.m. |
| Defendant. | ) |

BEFORE:  THE HONORABLE SHARAD H. DESAI, JUDGE

REPORTER'S TRANSCRIPT OF PROCEEDINGS

Motion Hearing and Case Management Conference

**APPEARANCES:**
For the Plaintiff:
    Watstein Terepka, LLP
    By:  **Patrick J. Fitzgerald, Esq.**
    75 14th Street NE, Suite 2600
    Atlanta, Georgia  30309

The Defendant appeared in propria persona:
    By:  **Lucas B. Horton**
    1202 Stratford Drive
    Richardson, Texas  75080

Official Court Reporter:
**Kimberly Portik, RMR, CRR, CRC**
Sandra Day O'Connor U.S. Courthouse, Suite 312
401 West Washington Street, SPC 31
Phoenix, Arizona 85003-2151
(602) 322-7249

Proceedings Reported by Stenographic Court Reporter
Transcript Prepared by Computer-Aided Transcription

## **P R O C E E D I N G S**

1          THE COURTROOM DEPUTY:  This is Case No. CV2024-1786,

2    PivotHealth Holdings, LLC, versus Horton.  This is the time set

3    for a case management conference.

4          Would the parties please announce for the record.

5          MR. FITZGERALD:  Good morning, Your Honor.  This is

6    Patrick Fitzgerald on behalf of PivotHealth.

7          THE COURT:  Good morning, Mr. Fitzgerald.

8          MR. HORTON:  Lucas Horton, the defendant.

9          THE COURT:  Good morning, Mr. Horton.

10          We all have chatted before on July 16th.  In

11    preparation for today's hearing, I have reviewed, of course,

12    the Rule 26(f) report.  I had also indicated that I would hear

13    Mr. Horton's motion for sanctions, so I have reviewed that as

14    well as the filings associated with it.  And previously at our

15    July 16 status conference I had indicated that I would also be

16    hearing a portion of the plaintiff's motion for sanctions

17    relating to allegations of abusive conduct by Mr. Horton, so we

18    will hear that today as well.  And I previously already ruled

19    that I was not going to address the bulk of the plaintiff's

20    motion for sanctions, and so I will not hear any argument on

21    what is probably the ultimate issue in this case.

22          So I'd like to first start with Plaintiff's motion for

23    sanctions regarding abusive conduct.  We'll then turn to

24    Mr. Horton's motion for sanctions, and then we will end with

1    the discussion of the case schedule and case management report.

2         With that, I am going to turn to you, Mr. Fitzgerald.

3    You know, at the July 16 hearing, I expressed some concerns

4    about, you know, my authority to regulate out-of-court

5    activity.  And, frankly, I have concerns about my practical

6    ability to manage communications between the parties.

7         That being said, you know, I did review the exhibits

8    to your initial motion for sanctions.  And I'm going to put

9    this on the record, as uncomfortable as it makes me feel, that,

10   you know, there were emails indicating that Mr. Horton had

11   called Plaintiff's counsel "fucking dirtbags."  That's a quote

12   with the "f" word misspelled.  And then another quote is

13   "little bitch ass piece of shit."  That was another quote.  And

14   then in Mr. Horton's response to the initial motion for

15   sanctions, Mr. Horton indicated that, this is a quote, "Respect

16   is not a given, and counsel for the Plaintiff has done nothing

17   to earn it.  They are helping a company who breaks the law

18   escape liability for their actions.  So no, the Defendant is

19   not going to offer them any respect or courtesy."  So that is

20   the backdrop in which I am going to hear argument on this.

21        So I'm going to start with you, Mr. Fitzgerald, and

22   ask you this:  Is this still an issue?  How did the Rule 26(f)

23   conference go?

24        MR. FITZGERALD:  Yes, Your Honor.  Would you like me

25   to approach the podium?

1          THE COURT:  Actually, that would be helpful.  Thank

2    you.

3          MR. FITZGERALD:  Yes, Your Honor.

4          Yes, Your Honor.  And just to clarify, we're not

5    seeking monetary sanctions here.  We just ask the Court to tell

6    Mr. Horton to remain civil.  I do believe, you know, absent

7    that direction Mr. Horton will continue attacking me.  The one

8    that got me a little flustered was, "Your family should be

9    embarrassed at how you earn a living."

10          I understand Mr. Horton is nervous that Pivot is not

11    simply going to drop this, but harassment is not a viable

12    defense strategy.  And I think given the narrow relief that

13    we're seeking, this is appropriate for the Court to just

14    instruct Mr. Horton to remain civil.

15          THE COURT:  Thank you.  And is that the specific

16    language you would like me to include in an order?

17          MR. FITZGERALD:  Yes, Your Honor.

18          THE COURT:  Thank you.  And do you have any specific

19    cases or cites that I can rely on here?  I think I have the

20    inherent authority to do this, but I just want to see if

21    there's anything you can add.

22          MR. FITZGERALD:  The cases cited the inherent

23    authority.  If Your Honor would like, I could try to find a

24    specific case involving verbally abusive conduct.

25          THE COURT:  We can do our research.  I will handle it.

1    Thank you.

2         MR. FITZGERALD:  Yes, Your Honor.

3         THE COURT:  I appreciate it, Mr. Fitzgerald.

4         Mr. Horton, I'm going to ask you to come up and

5    address this point, and then we will -- you can stay up here

6    and we'll talk about your motion for sanctions.

7         First of all, is this necessary?  Are you going to

8    object to me issuing an order asking you to be civil?

9         MR. HORTON:  No, I'm not.  And since the -- since our

10   hearing, I have not said anything of the sort to Mr. Fitzgerald

11   at all.

12        THE COURT:  Thank you.  I appreciate that.

13        I will issue a simple order or statement asking you to

14   be civil --

15        MR. HORTON:  And I'll also note it has nothing to do

16   with nervousness.  I just don't appreciate people trying to

17   enable these companies to continue breaking the law and

18   robocalling people that do not want to be robocalled.

19        THE COURT:  Regardless of the reasons for your

20   behavior, the behavior itself is unacceptable as well.

21        MR. HORTON:  I understand.  And like I said, I haven't

22   done it since.

23        THE COURT:  Thank you.  I appreciate that.

24        So I will issue an order asking you to be civil.

25        So now let's turn to your motion for sanctions.  As I

1    see it, there are really three issues here: first of all,

2    whether or not there was a stipulation authorizing

3    PivotHealth's subpoena to Yahoo; second, whether Mr. Horton

4    waived the issue by delaying and raising this with the Court

5    and whether or not even if there was a waiver by Mr. Horton I

6    should consider this issue given the allegation that

7    PivotHealth has abused this Court's authority in issuing a

8    premature subpoena; and, lastly, if I do consider the issue and

9    I do find that there was a violation of Rule 28 -- 26(d)(1),

10   what sanctions should I impose.

11        And so if we could handle each of those issues in

12   order, Mr. Horton, I would appreciate it.  And on the

13   stipulation, I want to first start with the statement in your

14   declaration that the plaintiffs cite.  It says, "We squabbled

15   over the dates a little, but then I agreed to it," and then it

16   continued.

17        Have you conceded that you agreed to the subpoena?

18        MR. HORTON:  No.  I thought this was going to be

19   dismissed, and so that was not an appropriate time for him to

20   send a subpoena and I did not agree to it.  I agreed to the

21   date -- the date range of the subpoena and that was it.  And I

22   didn't find it necessary for him to even file a subpoena

23   because I had filed one with the Court and was waiting, as I

24   was supposed to and as he should have, to send it to Yahoo.

25        THE COURT:  Thank you.

1              Why did you wait so long in bringing this to me?

2          MR. HORTON:  As I said, I thought that this was going

3     to be dismissed.  And then once they filed their motion, I

4     realized that something was wrong with them filing that

5     subpoena that early.  And so I did some research, and I found

6     that it was in fact not authorized and against the rules.

7          THE COURT:  So how have you actually been harmed by

8     the subpoena given that you were seeking the same information?

9          MR. HORTON:  Do I have to be harmed by them breaking

10    the rules?  And it is an invasion to my privacy.  Had you

11    dismissed my -- the -- had you granted my motion to dismiss, it

12    would have been a huge invasion of my privacy that they had

13    done that.

14         THE COURT:  Yeah.  But, I mean, you also moved the

15    Court to issue the subpoena before the motion to dismiss --

16         MR. HORTON:  And I waited.  I waited for the

17    appropriate time to -- and I waited for the Court to sign off

18    on it.

19         THE COURT:  Mr. Horton, just for the benefit of the

20    court reporter, can you make sure that I finish my sentence --

21         MR. HORTON:  Yes.  That's fine.

22         THE COURT:  -- before you start?  That way it's

23    crystal clear who said what.  Thank you.  I appreciate it.

24         My last question on this for you is what specifically

25    are you seeking in the nature of sanctions here?

1    MR. HORTON:  I couldn't find an attorney to represent

2  me on this.  I spent three weeks.  I talked to at least 20,

3  maybe 30 attorneys.  I started off with TCPA attorneys.  They

4  either wanted to represent -- they either want to enable the

5  companies doing it, like these guys over here, or they want to

6  represent the consumers in a class action.  Nobody wanted me.

7    So then I tried to get just regular civil attorneys.

8  Once they heard that the TCPA was the underlying issue, oh, no,

9  we don't want it.

10    So when I'm pro se as a plaintiff, that's my choice to

11  be at a disadvantage.  But here I did not choose to be at the

12  disadvantage I'm at right now.  And so I couldn't find an

13  attorney for this, and so I would -- I spent a lot of time and,

14  I don't know, I would say $3,000.

15    THE COURT:  Okay.  Thank you, Mr. Horton.  I

16  appreciate it.

17    Mr. Fitzgerald, I have got questions for you.

18    MR. FITZGERALD:  Yes, sir.

19    THE COURT:  So I'm going to ask you to explain in

20  detail the timeline here on issuance of the subpoena and with

21  citations to anything that's already in the record.  And let me

22  be clear that I am concerned, and I need you to make sure that

23  you are answering as forthrightly as possible.

24    MR. FITZGERALD:  Yes, Your Honor.

25    Well, Mr. Horton contacted us November, I think it was

1    the 3rd, said he was going to issue a subpoena to Yahoo and --

2    or he was going to ask -- file a motion to issue the subpoena

3    to Yahoo.  I'm sorry, Your Honor.  And he filed that motion.

4    We -- and he filed the motion because as a pro se litigant he

5    doesn't have authority to issue a subpoena under Rule 45.

6         We reached out to Mr. Horton and told him that we

7    would -- because we agreed that the Yahoo discovery was

8    necessary and that there was no reason to wait, we would issue

9    our own subpoena.  We provided him with a copy.  He said he did

10   not consent to the date range we proposed, so we narrowed that

11   range.  And Mr. Horton then said he was going to object anyways

12   because it was too broad.  But he never filed any sort of

13   objection, and we included the subpoena in our response.

14        THE COURT:  And this exchange that you are referring

15   to occurred on November 15, 2024; correct?

16        MR. FITZGERALD:  That's correct, Your Honor.

17        THE COURT:  And that's all set forth in Exhibit A to

18   Document 25, your initial motion for sanctions; correct?

19        MR. FITZGERALD:  No, Your Honor.  I believe this was

20   in response to his motion for issuance of the subpoena.

21        THE COURT:  Okay.  I did review -- it might be a lot

22   of the similar language, but I will double-check.

23        MR. FITZGERALD:  We might have included it twice.  I

24   just -- I know we included a copy of the subpoena in response,

25   saying that his request for a subpoena was likely moot.

1              THE COURT:  Take a moment.

2              Okay.  So when did you -- so we've established the

3      November 15th date as the date that you had this email

4      exchange; correct?

5              MR. FITZGERALD:  Yes, Your Honor.

6              THE COURT:  When did you serve the subpoena on Yahoo?

7              MR. FITZGERALD:  November 18th.

8              THE COURT:  Okay.  So at this point you have exchanged

9      emails with Mr. Horton, you may have agreed on and aligned on

10     dates for the subpoena, but he has indicated to you that he did

11     not consent to the subpoena any further.

12             What's your explanation for why you moved forward with

13     issuing the subpoena?  Because Rule 26(d)(1) is clear that

14     discovery cannot happen before a Rule 26(f) conference unless

15     the court authorizes it or there's a stipulation.  And I'm not

16     sure I see the stipulation based on this email exchange on

17     November 15, yet you went ahead and served the subpoena on

18     November 18.

19             So what's your explanation?  This is your chance to

20     explain what happened here.

21             MR. FITZGERALD:  Yes, Your Honor.  We moved forward

22     with the subpoena, I mean, mostly because he had already filed

23     a motion for the Court to issue and to -- you know, partly as a

24     matter of efficiency to -- so the Court didn't have to issue

25     its own subpoena.

1          THE COURT:  So basically what your argument is no

2    harm, no foul, he was seeking the same information anyway; so

3    even though he technically didn't agree and stipulate to the

4    subpoena, he wanted the same information?  Is that -- am I

5    fairly characterizing your argument?

6          MR. FITZGERALD:  Your Honor, I believe that there are

7    two arguments for consent to take discovery on this narrow

8    issue.

9          Implied consent by him asking the Court to issue the

10   same subpoena.  And while he tries to reframe that as a request

11   for early discovery, this Court does not have a blanket stay on

12   discovery pending motion to dismiss.  And we agreed that this

13   discovery was necessary, so he didn't need the Court's

14   permission for early discovery.  So implied consent.

15         And consent -- Mr. Horton refused to sign a consumer

16   permission slip that Yahoo requires for -- doesn't require,

17   asks for these subpoenas to issue them more -- quicker.  But he

18   did not raise any sort of objection to timeliness.

19         And so those are our arguments for consent in addition

20   to the other arguments we lay out in our response.

21         THE COURT:  I appreciate your argument and I recognize

22   the logic of it, but the rule does not say consent.  Implied

23   consent is not a part of it.  It says you can seek early

24   discovery when authorized by these rules, by stipulation, or by

25   court order.  And so there is no implied consent there.  A

1    stipulation has to be express, and that's where I am concerned.

2    But I think I have heard your best argument here.

3         I don't need to ask you further questions on the

4    waiver argument.  It has been a very, very long time since the

5    subpoena was issued and responded to, and I understand your

6    argument there.

7         If I do find -- if I do consider the issue and not

8    deem it waived and I do find that you violated Rule 26(d)(1),

9    what's the right sanction?

10        MR. FITZGERALD:  Well, Your Honor, I believe the right

11   sanction would be to say the subpoena was issued improperly.

12   But in terms of monetary sanctions, that would require the

13   Court to invoke its inherent authority as Mr. Horton is a pro

14   se litigant and I don't believe he has shown any evidence of

15   bad faith.

16        We can reissue the subpoena if Your Honor would like

17   us to.

18        THE COURT:  Thank you.  That's helpful.  I appreciate

19   it.

20        I'm going to take this matter under advisement, and I

21   will issue an order on what I'm doing on it.  I appreciate it.

22        You can go ahead and head back, and then we'll turn to

23   the case management conference portion of this hearing.

24        MR. FITZGERALD:  Yes, Your Honor.

25        THE COURT:  So at the July 16 status conference, I

1    indicated that I was inclined to move forward with an

2    aggressive schedule in this case, and I appreciate that you all

3    have obliged my request because the schedule that you proposed

4    is in fact quite expedited and I will enter it as you all have

5    requested.

6            You all set forth -- or at least PivotHealth set forth

7    what discovery it wanted.  It intends to depose Mr. Horton,

8    that's not surprising; may request some documents; and it may

9    seek a forensic examination of his devices.

10           My only suggestion to you, Mr. Fitzgerald, is as soon

11   as I issue this case schedule, get going.  I'm sure you and

12   your client are eager to do so.  So that way if and when

13   discovery disputes pop up, you can get them to me and we can

14   keep this case moving forward, because I will note that it

15   has -- it has been filed -- it was filed quite a while ago, and

16   due to delays on my part we haven't moved as quickly.  So I do

17   want to commit to moving this forward more quickly.

18           Mr. Horton, you didn't indicate whether or not you

19   have any discovery.  Do you know if --

20           MR. HORTON:  No, I don't, Your Honor.

21           THE COURT:  Okay.  Thank you.

22           And, again, just please make sure I'm finished with my

23   sentence for the benefit of the court reporter when you

24   respond.

25           MR. HORTON:  Apologize.

1          THE COURT:  Thank you.  That's okay.

2          So I'm going to issue the schedule that you all agreed

3   to.  I'm going to ask that you please stick to that schedule.

4   I am not inclined to grant extensions unless something

5   unforeseeable pops up that materially affects the deadlines.

6   It happens, and, you know, I will look favorably upon

7   stipulations that you guys file with me.  But let's try to hew

8   to the schedule.

9          I noted that you guys considered referral to a

10  magistrate judge as long as the magistrate judge was

11  Judge Morrissey, who had previously heard the case filed by

12  Mr. Horton.  Unfortunately, we do not direct/assign cases to

13  magistrate judges, so it would be a random draw and then, you

14  know, it would be the luck of the draw.  So given that, I don't

15  believe the parties consent to referral to a magistrate judge.

16          Is that correct, Mr. Fitzgerald?

17          MR. FITZGERALD:  Yes, Your Honor.

18          THE COURT:  Thank you.

19          Mr. Horton, you agree as well?

20          MR. HORTON:  That's fine with me.

21          THE COURT:  Thank you.

22          So I will keep this case, and I will issue the

23  schedule.

24          You all did include a deadline for good-faith

25  settlement, and I will expect you to comply with that deadline,

1   which I think is in March of 2026, after discovery is

2   completed.  I know this case might be a tricky one to settle,

3   but I would encourage you to think creatively on what each side

4   might want to be able to move forward.  And if at any point you

5   all would be interested in help from a magistrate judge, I'm

6   happy to refer this to a magistrate judge to hold a settlement

7   conference to see if there's any way to find a meeting of the

8   minds here.  So just file a joint motion if you guys want to go

9   that route; I'm happy to refer this to a magistrate judge.  And

10  our magistrate judges are fantastic.  I mean, their track

11  record on settlements is really impressive.

12          Last but not least, I'm going to emphasize my

13  discovery dispute procedure.  And it will be set forth in the

14  case schedule, but I want to make sure that you all know my

15  approach here.  I do not allow the filing of Rule 37 motions.

16  I think they are the antithesis of what Rule 1 commands me to

17  do, which is to facilitate the just, speedy, and inexpensive

18  determination of cases.  So if a discovery dispute does arise,

19  please jointly call my chambers, and my staff will get us

20  scheduled for a Zoom call and we will get on the phone as

21  quickly as possible -- or actually the TV -- and do a Zoom

22  conference.  I will figure out what the issue is, and then I

23  will request additional briefing from the parties if I need it

24  or I'll just rule from the bench.  So this helps me deal with

25  things quickly; it prevents you all from having to file a bunch

1    of paper unnecessarily.  And at the end of the day, I hope that

2    there are not too many discovery disputes and that you all can

3    work cooperatively and communicate with one another.

4            Again, Mr. Horton, I do appreciate your changed

5    approach.  It is appreciated.  I'm glad that we're headed down

6    that path.

7            And I would ask you to please figure out where you

8    guys can agree.  And where you can't, you bring it to me and I

9    will deal with it.

10           Mr. Fitzgerald, is there anything further from you for

11   this hearing?

12           MR. FITZGERALD:  No, Your Honor.

13           THE COURT:  Thank you.

14           Mr. Horton?

15           MR. HORTON:  No, Your Honor.

16           THE COURT:  Thank you.

17           And before I adjourn, this might be the first time you

18   all have been in a room together.  If you have met in person

19   before -- okay.  You have.  Good.

20           MR. FITZGERALD:  Yes, Your Honor.

21           THE COURT:  Well, feel free to take this opportunity

22   to chat about deposition scheduling or discovery or how you

23   might be able to work this case through.  Because you both flew

24   out from somewhere else to be here, so you might as well use

25   the time.  So I appreciate it.  Thank you.

1          We are adjourned.

2          MR. FITZGERALD:  Yes, Your Honor.  Thank you.

3     (Proceedings conclude at 10:23 a.m.)

4                    ---oOo---

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

UNITED STATES DISTRICT COURT

1

2

3

4

5                    **C E R T I F I C A T E**

6

7          I, KIMBERLY PORTIK, do hereby certify that I am duly

8   appointed and qualified to act as Official Court Reporter for

9   the United States District Court for the District of Arizona.

10         I FURTHER CERTIFY that the foregoing pages constitute

11  a full, true, and accurate transcript of all of that portion of

12  the proceedings contained herein, had in the above-entitled

13  cause on the date specified therein, and that said transcript

14  was prepared under my direction and control.

15         DATED at Phoenix, Arizona, this 29th day of August,

16  2025.

17

18

19                          _/s/ Kimberly Portik_
20                          Kimberly Portik, RMR, CRR, CRC

21

22

23

24

25

UNITED STATES DISTRICT COURT