**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | | |
|---|---|---|
| **PivotHealth Holdings, LLC,**<br>**Plaintiff,** | §<br>§<br>§ | |
| **V** | § | **Case No: CV-24-01786-PHX-SHD** |
| **Lucas Horton**<br>**Defendant.** | §<br>§<br>§ | |

## DEFENDANT'S MOTION FOR LIMITED RECONSIDERATION OF DOC. 93 (Fed. R. Civ. P. 54(b); LRCiv 7.2(g))

Defendant Lucas Horton respectfully seeks limited reconsideration of the November 3, 2026 Order (Doc. 93) insofar as the Court construed the Rank Media settlement release and relied upon that construction in finding lack of probable cause and malice on PivotHealth Holdings LLC's wrongful-institution claim. The signed release was already in the record. Defendant does not request reconsideration of the separate abuse-of-process or contempt rulings in this motion.

### I. PRECISE ISSUE FOR RECONSIDERATION

The Order states that Arizona law governs interpretation of the release because "neither party contends that the law of another state differs from Arizona's on this point." Doc. 93 at 15 n.8. But § 11 of the signed Rank Media agreement expressly selects Texas law to govern its "validity, construction, interpretation, and administration." The agreement was already before the Court under seal at Doc. 55-2. Pivot expressly relied on that exhibit rather than reattaching it. See Doc. 65 ¶ 20 n.1 and ¶ 26; Doc. 93 at 15–16.

The Order concluded that broad language referring to "any other party whatsoever" necessarily released Pivot, despite the agreement naming several other business entities and not naming Pivot. Doc. 93 at 15–16, 19–21. Texas Supreme Court authority requires more than a generic description of all potentially responsible persons to identify an unnamed released party. That difference in governing law may materially affect the release's effect and the Court's further conclusion that Defendant's contrary interpretation was not reasonably possible.

## II. STANDARD; ACKNOWLEDGMENT OF THE EARLIER BRIEFING

Because the Order determined liability but left damages for trial, it is interlocutory and may be revised under Fed. R. Civ. P. 54(b). LRCiv 7.2(g)(1) ordinarily requires manifest error, or new facts or authority that could not earlier have been presented with reasonable diligence; it requires identifying matters overlooked or misapprehended and prohibits repeating prior argument. This motion identifies a specific governing-law issue and seeks limited relief.

Defendant previously argued that Pivot was not identified in the Rank Media release even though other companies were expressly named, and that the written agreement—not prior negotiating emails—should control its scope. See Doc. 74 at 3, 5–6, 10; Doc. 93 at 15. He did not separately identify Section 11's Texas choice-of-law clause or cite the particular Texas Supreme Court cases below. The original agreement and his objection to treating an unnamed company as released were nevertheless before the Court.

When Defendant read and signed the written Rank Media agreement, he understood it as a contract releasing the specifically named companies. Section 3 identifies Rank Media and expressly lists Les Promotions Modiales, Solar Direct Marketing, and American Health Plans; it does not identify PivotHealth Holdings LLC. Defendant understood Pivot's omission to mean Pivot was not released. This was his own ordinary reading of the document, not an interpretation adopted only after later legal research. He did not know of *Duncan*, *McMillen*, or *Finley Resources* at that time, nor did he understand that he needed to brief the Texas-law provision and authorities separately when opposing summary judgment because the agreement had already been submitted before the Court.

Defendant's prior experience with TCPA litigation is that the vast majority of companies do not have the capability to make outbound calls and hire third-party telemarketers to do so. Knowing that Rank Media physically placed the calls did not, by itself, lead him to believe Pivot lacked potential vicarious liability. The Pivot-branded policy materials, welcome communications, and charge gave Defendant a factual reason to investigate whether an agency relationship existed. And after the Court's order, the question remains as to why American Health Plans would hire Rank Media to make calls exclusively selling Pivot branded plans and risk TCPA lawsuits without being directed or paid by Pivot to do so?

This experience concerns Defendant's reasons for filing suit on December 29, 2022. His interpretation of the written Rank Media release, signed on December 30, concerns the distinct question whether he reasonably believed he could continue pursuing Pivot after that agreement.

Defendant has been forced to represent himself in this and had unsuccessfully sought counsel from more than ten attorneys. Only after the November 3 Order, through further legal research, did he learn of the Texas decisions explaining the legal significance of naming or particularly identifying released persons. Those decisions are not newly decided authority, and his pro se status does not automatically excuse a previously available argument. He offers this chronology to clarify that his understanding of the written contract predates his discovery of the cases—not as a claim that subsequent legal research creates a new procedural exception.

Defendant recognizes that reconsideration is ordinarily unavailable for an argument that could reasonably have been raised earlier. *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000), is especially relevant because it rejected a previously available choice-of-law argument first presented on reconsideration. Nevertheless, Defendant respectfully requests limited review under Rule 54(b): the signed contract, its express governing-law clause, and the core dispute over Pivot's omission from the list of released companies were already in the record. He alternatively requests a short supplemental briefing schedule on that narrow issue.

## III. THE AGREEMENT SELECTS TEXAS LAW, AND TEXAS LAW DISTINGUISHES GENERIC LANGUAGE FROM IDENTIFICATION

Arizona generally evaluates express contractual choice-of-law provisions under Restatement (Second) of Conflict of Laws § 187. *Swanson v. Image Bank, Inc.*, 206 Ariz. 264, 266–69, ¶¶ 6–16, 77 P.3d 439 (2003). Section 11 selects Texas law, and the agreement resolves a Texas federal lawsuit involving a Texas resident. The Court therefore should address whether the chosen law governs the scope of the release that

Pivot invokes as a non-signatory beneficiary, rather than assume that Arizona law governs because no party had earlier briefed a conflict.

In *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 419–20 (Tex. 1984), the Texas Supreme Court held that a release of named persons and "any other corporations or persons whomsoever responsible" did not discharge an unnamed defendant merely because the defendant fell within that general class. A nonnamed party must be described with sufficient particularity that its identity or connection with the matter is not in doubt. See also *McMillen v. Klingensmith*, 467 S.W.2d 193, 196 (Tex. 1971). The Texas Supreme Court more recently reaffirmed the descriptive-particularity requirement and distinguished genuinely identifiable relationship categories from unlimited catchall language. *Finley Resources, Inc. v. Headington Royalty, Inc.*, No. 21-0509, slip op. at 10–11, 15, 21–23 (Tex. May 12, 2023). Finley also cautions that surrounding circumstances cannot contradict, change, enlarge, or supplement the meaning of the words adopted in an unambiguous written agreement, although external evidence may establish who actually belongs to an adequately identified category. Section 3 of the signed release specifically identifies Les Promotions Modiales, Inc. d/b/a Rank Media Agency; Solar Direct Marketing, LLC; and American Health Plans, LLC, besides the named defendant Rank Media USA, LLC. It does not name Pivot. The instrument also lists relationship categories, including agents and affiliates; a party actually shown to fall within such a sufficiently particular category may be released under Texas law. But the Order did not determine that Pivot was Rank Media's agent, affiliate, or a member of any other sufficiently identified category. The residual phrase

"any other party whatsoever," without more, does not necessarily identify Pivot under *Duncan* and *Finley Resources*.

Section 9 provides that the written agreement supersedes prior and contemporaneous negotiations. Defendant understands the Court may consider his December 2022 exchanges with Rank Media's attorney for a separate purpose: assessing his subjective understanding before the final writing. In particular, the Order relies on a December 20 email in which he accepted proposed settlement terms after earlier objecting to releasing Pivot. Defendant does not ask the Court to disregard that evidence. He instead submits that those communications should not substitute for the legal question whether the ultimately executed, integrated release actually identified Pivot under its selected Texas law.

## IV. MATERIALITY TO PROBABLE CAUSE AND MALICE

The Order described the Rank Media settlement as "most critical[]" among the reasons no reasonably prudent person could believe the TCPA claims against Pivot remained viable. Doc. 93 at 19. It also relied on Defendant's supposed knowledge that Pivot had been released in finding malice. Id. at 20–24. If the writing did not legally release Pivot—or if his reading of the final writing was at least legally tenable under Texas law—the Court should reconsider what inference can properly be drawn from Defendant's continued pursuit of Pivot after signing it.

The Order expressly recognized that Pivot-branded policy materials, a welcome communication, and a charge appearing as Pivot initially furnished reason to believe Pivot might bear responsibility for the solicitation. Doc. 93 at 18–19. Defendant

understood that the physical caller was a separate entity; he pursued potential vicarious liability as he has in the vast majority of the more than 50 TCPA cases he has filed in federal and Texas courts. Federal law recognizes that such liability is possible where an agency relationship is shown. *Jones v. Royal Admin. Servs., Inc.*, 887 F.3d 443, 449–50 (9th Cir. 2018). This does not establish agency or make payment for a sale sufficient by itself; the issue here is whether the Court's release analysis supported a conclusive finding of no reasonable basis and malice.

Defendant's experience in prior TCPA litigation demonstrates that knowing a third party physically placed the calls did not mean he believed the company whose products were being marketed was free from potential liability. The fact that Defendant knew Rank Media made the calls should not, standing alone, support an inference of malice or lack of probable cause. Otherwise, the same reasoning would call into question virtually every TCPA action this Defendant or any other TCPA plaintiff brings involving third-party telemarketers. Probable cause must be evaluated based on the specific facts known about each defendant.

Defendant recognizes two important limitations. First, he sued Pivot on December 29, 2022, before signing the written release on December 30. The Court's reasoning about the December 20 negotiations must therefore be evaluated separately from the legal effect and his understanding of the final writing. Second, the Order also relied on the absence of proven agency, wording in the amended complaint, the refund claim, and other conduct. Doc. 93 at 18–25. Correcting the release analysis would not automatically decide those separate issues. The requested relief is limited to the release and the extent its construction affected the wrongful-institution findings.

## V. RELIEF REQUESTED

Defendant respectfully requests that the Court (1) consider the express Texas choice-of-law provision and the Texas descriptive-particularity rule in construing the Rank Media agreement; (2) reconsider the determinations that the final written release necessarily discharged Pivot and that an understanding to the contrary was inherently unreasonable; (3) reassess, in light of the corrected release analysis, whether lack of probable cause and malice are established as a matter of law on the wrongful-institution claim; or (4) alternatively, permit limited supplemental briefing concerning the governing law, the scope of the release, and the effect on probable cause and malice. Defendant does not ask the Court to decide in this motion that Pivot was actually vicariously liable under the TCPA or to revisit the separate abuse-of-process or contempt rulings.

Dated: 11/4/2026 Respectfully submitted,

______________________________

Lucas Horton
lukeduke365@yahoo.com
1202 Stratford Dr
Richardson, TX 75080
Tel: (469)-350-8428