**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| PivotHealth Holdings LLC,<br>Plaintiff,<br>v.<br>Lucas B. Horton,<br>Defendant. | No. CV-24-01786-PHX-SHD<br>**ORDER** |

Pending is Defendant Lucas Horton's Motion for Limited Reconsideration (Doc. 94) of my November 3, 2026 Order (Doc. 93), which granted summary judgment to Plaintiff PivotHealth Holdings LLC ("Pivot") as to liability on its wrongful institution of civil proceedings and abuse of process claims. The reconsideration motion will be **denied**.

## I. BACKGROUND

The facts are set out in the prior order. (Doc. 93 at 1–10.) As relevant here, I held that Horton lacked probable cause to institute and continue the *Underlying Action*, and that he acted with malice.[1] (*Id.* at 17–24.) In reaching that conclusion, I considered Horton's December 2022 settlement with Rank Media (the "Rank Media Release," or "Release"). Because neither party contended that another state's law governed the Rank Media Release, or differed in any way from Arizona law, I applied Arizona law. (*Id.* at 15 n.8.)

---

[1] As defined in my prior order, the *Underlying Action* refers to *Horton v. PivotHealth Holdings LLC*, No. 3:22-cv-02915 (N.D. Tex. filed Dec. 29, 2022), *transferred*, No. 2:23-cv-02533-MTM (D. Ariz.). Other capitalized terms have the meanings given in the prior order.

Horton only seeks reconsideration of the summary judgment ruling regarding the wrongful institution claim. (Doc. 94 at 1.) He argues that Rank Media Release contains a Texas choice-of-law clause, and that under Texas law a release discharges only those parties it names or describes with particularity. (*Id.* at 1–2, 4–6 (citing *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 419–20 (Tex. 1984), and *Finley Res., Inc. v. Headington Royalty, Inc.*, 672 S.W.3d 332 (Tex. 2023)).) Because the Release does not name Pivot, he contends it did not release his claims against Pivot, and that I should reassess probable cause and malice. (*Id.* at 6–8.) Horton does not challenge the abuse of process or contempt rulings. (*Id.* at 1, 8.)

## II. LEGAL STANDARD

A district court may reconsider an interlocutory order at any time before final judgment. Fed. R. Civ. P. 54(b); *City of L.A., Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 885 (9th Cir. 2001). I have discretion to determine whether to grant a request for reconsideration. *See Navajo Nation v. Confederated Tribes & Bands of the Yakama Indian Nation*, 331 F.3d 1041, 1046 (9th Cir. 2003). Ordinarily, a motion for reconsideration will be denied "absent a showing of manifest error or a showing of new facts or legal authority that could not have been brought to [the court's] attention earlier with reasonable diligence." LRCiv 7.2(g)(1). A motion for reconsideration "may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000). Nor may it "repeat any oral or written argument made by the movant in support of or in opposition to the motion that resulted in the Order." LRCiv 7.2(g)(1).

## III. DISCUSSION

Horton does not satisfy the requirements for reconsideration. His argument rests on a choice-of-law clause in a 2022 release agreement, and on Texas decisions that he acknowledges "are not newly decided authority." (Doc. 94 at 4.) He concedes that, in opposing summary judgment, he "did not separately identify Section 11's Texas choice-

of-law clause or cite the particular Texas Supreme Court cases" on which he now relies. (*Id.* at 2.) Both were available to him throughout this litigation. Although the Release was in the record, no party invoked its choice-of-law clause or argued that Texas law differed from Arizona's in any meaningful respect. (*See* Doc. 93 at 15 n.8.) A party may not hold a choice-of-law argument in reserve and raise it for the first time after an adverse ruling. *See Kona*, 229 F.3d at 890 (affirming the denial of reconsideration where the movant first raised a choice-of-law argument in its motion for reconsideration).

Moreover, my conclusions that Horton lacked probable cause to bring—and continue to assert—his Telemarketing Claims against Pivot, and acted with malice when he did so, are not dependent on the legal effect of the Release. Rather, those conclusions are independently established by Horton's conduct and the substantial evidence in the record that Horton (1) believed, when he filed suit, that he had agreed to release his Telemarketing Claims against Pivot, and (2) knew that Pivot had not made the Calls and had no reasonable basis to believe Pivot was vicariously liable for them. (Doc. 93 at 18–24.)

First, the written Release could not have given Horton probable cause to file the *Underlying Action*, because he filed *before* he saw the Release. As I explained in my prior order, Horton sued Pivot on December 29, 2022, and signed the Release the next day. (*Id.* at 21.) When he filed suit, Horton knew only what he had agreed to nine days earlier: a release of all claims arising from the Calls, including his claims against Pivot, in exchange for $18,000. (*Id.* at 20–21.) Before filing suit, Horton told Pivot that Rank Media "made sure" the settlement "included [Pivot]" and that Pivot was "out of the woods for those violations." (*Id.* at 6.) He then lied to Pivot—telling it that the agreement with Rank Media "fell through"—and concealed the fact of his settlement with Rank Media for the duration of the *Underlying Action*. (*Id.* at 21.) No reasonably prudent person who had agreed to release his claims against a party would file those same claims the day before signing the settlement agreement. That is true regardless of how a Texas court might later construe the document. And the other grounds on which I found that Horton lacked a reasonable

basis to believe Pivot was vicariously liable for the Calls do not involve the Release at all. (*See id.* at 19 (detailing the undisputed evidence that Pivot, Rank Media, and American Health all either explicitly explained or otherwise indicated to Horton that Pivot was not responsible for the Calls).)

Second, Horton acknowledges that his reading of the written Release bears only on "the distinct question whether he reasonably believed he could *continue* pursuing Pivot after that agreement." (Doc. 94 at 3 (emphasis added).) Thus, by his own account, the wording of the Release has no bearing on whether he had probable cause to file the *Underlying Action*, and lack of probable cause at filing is sufficient to satisfy that element. *See* Restatement (Second) of Torts § 674 (1997). In any event, I separately held that even if Horton had some reasonable basis to file the Telemarketing Claims, nothing justified his continued pursuit of those claims, including by amending his complaint to allege that Pivot itself made the Calls. (Doc. 93 at 22.) He knew those allegations were false. (*Id.* at 22.) Again, that holding has nothing to do with the Release, and Horton does not challenge it.

Third, the malice finding rests on Horton's purpose in asserting his claims, not on the legal effect of the Release. Whatever Texas law would make of the Release, the undisputed record shows that in December 2022 Horton believed he was releasing his Telemarketing Claims against Pivot, and that he sued Pivot on those claims anyway. He told Rank Media's counsel he would "get [Pivot]" another way, and he falsely told Pivot that the settlement "fell through." (Doc. 93 at 21, 24.) He testified that he "was going to sue [Pivot] no matter what." (*Id.* at 24.)

In sum, my analysis of probable cause and malice would not change even if the Release would be interpreted by a Texas court to exclude claims against Pivot. Horton knew when he filed suit that he had agreed to release all claims against Pivot; he lied to Pivot about the settlement and then did his best to conceal the settlement from Pivot; he then lied to the district court when he amended his complaint to state that Pivot itself made the Calls. Texas's particularity requirement for the release of claims does not change any of these conclusions.

## IV. CONCLUSION

Horton's Texas law argument could have been raised earlier and does not change my holding that Horton lacked probable cause and acted with malice when he brought his Telemarketing Claims against Pivot. His reconsideration motion will therefore be denied.

Accordingly,

**IT IS ORDERED** denying Horton's Motion for Limited Reconsideration (Doc. 94).

Dated this 16th day of November, 2026.

Honorable Sharad H. Desai
United States District Judge